STATE OF NORTH CAROLINA v. BILLIE GAUTHER PUCKETT

No. 8117SC511

(Filed 17 November 1981)

1. **Criminal Law § 166— the brief—statement of case—citation of authority**

Defendant's appeal is subject to dismissal for failure to comply with Appellate Rule 28(b)(2) and (3) where defendant's brief did not include a concise statement of the case and did not cite any authority or statute for the arguments therein.

2. **Criminal Law § 54— expert pathologist—drugs in deceased's body—exclusion of testimony**

The trial court properly excluded the testimony of an expert in the field of pathology relating to drugs found in the body of deceased where the witness was never qualified as an expert in the field of toxicology and he indicated that the toxicology examination was done by someone else not under his supervision.

3. **Criminal Law § 169.6— failure of record to show excluded testimony**

An exception to the exclusion of evidence cannot be sustained when the record fails to disclose what the witness would have testified had he been permitted to answer.

**4. Homicide § 19.1— acts of violence by deceased—inadmissibility**

> The trial court in a homicide case properly excluded testimony concerning specific acts of violence of the deceased where there was no evidence that defendant had knowledge of such acts.

**5. Criminal Law § 117.2— interested witness—failure to give requested instruction**

> Where a witness in a homicide case who testified that defendant talked about killing deceased and thought she could do it without going to prison also testified that she was aware that if defendant was convicted, the witness's child would receive all of deceased's estate, the trial court erred in failing to give defendant's requested instruction that the witness was interested in the outcome of the case and that her testimony should be scrutinized accordingly.

APPEAL by defendant from *Strickland, Judge.* Judgment entered 8 August 1980 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 23 October 1981.

The defendant was indicted for the murder of her husband. A jury found her guilty of voluntary manslaughter and she was sentenced to three years imprisonment.

The defendant's evidence tended to show that when her husband came home on the afternoon of 28 November 1979, he was under the influence of drugs. He accused the defendant of running around on him. He pointed a gun in her face and cocked and uncocked the gun, telling the defendant that if she did not tell the truth, he would kill her. The deceased hit the defendant and threatened to smash in her skull. Her testimony continued as follows:

> I don't know how much time passed, but he kept pacing up and down and he told me that he was going to tie me to the bed. He said I was going to regret what happened. He never said exactly what. He just indicated that it would be something that I would not really like at all. There was another knock at the door. I said, "We are going to have to answer the door." He said, "I'll answer it, but if you come out of this bedroom, I'll kill you." Then he slipped on his jeans and I said, "I'm going to put my clothes on too." I jumped up and I put on my jeans and I put on my bra. He had put the gun back into the closet and my clothes were right there in front of the closet. I picked up the gun and walked out in the hall. I got up there and there was no one in there but Harold.

He saw me with the gun and he ran toward me and I tried to cock it. It's a revolver. I tried to cock it and it went off and I though it had hit him and I screamed, "Oh, my God, Have I shot you?" When he saw that I didn't mean to shoot him and it had scared me probably more than it scared him, he started toward me again. Then I cocked it and I said, "All I want is to get out of the house. If you'll just let me get out of the house, just go into the yard, let me leave." I was terrified. I was afraid to walk past him because I knew if I did he would take the gun away from me and shoot me. That's why I wanted to get him to go out into the yard. He said, "Hell no, you are going to have to shoot me in the back first." He turned and went into the bedroom that all the guns are in, and there must have been five or six big boxes of ammunition in there too, knives. The next thing I knew he had been shot. I don't recall pulling the trigger. I don't even recall hearing it go off. I do remember the first one. But I just knew he had been hit. He must have hollered or something. I ran out the door and I screamed for Wes. When he was going into the room, I thought he was going to get one of those guns that were in there, because there is no way out. He told me that I would not get out of that trailer. There is no way out from that room.

The defendant's evidence further tended to show that the defendant called an ambulance immediately after the shooting and that she tried to resuscitate the deceased. There was evidence tending to show that the deceased had a reputation as a violent and dangerous person and that he had subjected the defendant to physical abuse over an extended period of time.

Other facts pertinent to the resolution of this appeal are contained in the opinion of the Court.

*Attorney General Edmisten by Assistant Attorney General Nonnie F. Midgette for the State.*

*D. Leon Moore for the defendant-appellant.*

MARTIN (Robert M.), Judge.

[1] Defendant's appeal is subject to dismissal for failure to comply with the North Carolina Rules of Appellate Procedure. Rule

28(b)(2) and (3) provides in pertinent part that the appellants' briefs shall contain:

(2) A concise statement of the case.

(3) An argument. This shall contain the contentions of the appellant with respect to each question presented together with citations of the authorities, statutes, and those portions of the record on appeal upon which he relies.

By application of this Rule, defendant has abandoned her entire appeal, as counsel for defendant did not present a concise statement of the case and did not cite a single authority or statute for the arguments in her brief. Although the questions presented by this case have persuaded us in the interests of justice and in our discretion, as permitted by Rule 2, N.C. Rules App. Proc., to waive the procedural errors present, we again emphasize to the practicing bar that the Rules of Appellate Procedure are mandatory upon all parties before this Court. A thorough understanding of the Rules is essential for competent representation of clients in the Appellate Courts.

[2]  The defendant assigns as error the failure of the trial court to allow Dr. Anthony Macri to testify about the result of the toxicologic analysis of the deceased's body. Dr. Macri testified as an expert in the field of pathology and he indicated that the toxicology examination was done by someone else not under his supervision. Dr. Macri was never qualified as an expert in the field of toxicology. "A finding by the trial judge that a witness is not qualified to testify as an expert as to a particular matter will ordinarily not be reversed on appeal, unless there is abuse of discretion or the ruling is based on an erroneous view of the law." *State v. Peterson*, 24 N.C. App. 404, 408, 210 S.E. 2d 883, 885-86 (1975); 1 Stansbury's N.C. Evidence § 133 (Brandis Rev. 1973). We find no abuse of the trial court's discretion in excluding the testimony of Dr. Macri relating to drugs in the body of the deceased.

[3]  The defendant next assigns as error the failure of the trial court to allow the decedent's father to be questioned about the way in which the deceased treated the defendant. Th trial court sustained the State's objection to these questions. When an objection to a specific question is sustained, this normally means that

the answer the witness would have given should be made a part of the record. 1 Stansbury's N.C. Evidence § 26 (Brandis Rev. 1973). An exception to the exclusion of evidence cannot be sustained when the record fails to disclose what the witness would have testified had he been permitted to answer. *State v. Fletcher* and *State v. Arnold,* 279 N.C. 85, 181 S.E. 2d 405 (1971). Because the record fails to disclose what the witness's answers would have been, this assignment of error is without merit and is overruled.

The defendant's fourth assignment of error concerns the failure of the trial judge to permit questions of the investigating officer about statements made by the defendant at the scene. In her fifth assignment of error, defendant argues that the trial court should have allowed the decedent's first wife to be questioned about her previous relationship with the decedent. In both of these instances, the record does not disclose what the witnesses' answers would have been had they been allowed to testify. For the above stated reason, these assignments of error are without merit and are overruled.

[4] The defendant further contends that the trial court erred in failing to permit Terry Stephen Johnson to testify concerning specific acts of violence of the deceased. We disagree.

Where there is evidence of self-defense, the general character of the deceased as a violent and dangerous man is competent. Evidence of specific acts of violence, however, which have no connection with the homicide is not admissible. *State v. Morgan,* 245 N.C. 215, 95 S.E. 2d 507 (1956). In *State v. Davis,* 259 N.C. 138, 129 S.E. 2d 894 (1963), the defendant was not allowed to introduce evidence that the deceased had assaulted certain persons in order to establish the dangerous and violent character of the deceased. Evidence of specific acts of violence may be admitted only when the defendant knew of them and when the point in issue is the reasonableness of the defendant's apprehension. *Nance v. Fike,* 244 N.C. 368, 93 S.E. 2d 443 (1956).

Here there is no evidence in the record that the defendant knew of the incident which was excluded from evidence. Mr. Johnson testified about the dangerous and violent reputation of the deceased. His testimony regarding specific acts of violence was properly excluded.

[5] The defendant also assigns as error the failure of the trial judge to charge the jury that Carol Cox was an interested witness. The judge gave a general instruction on witness credibility but failed to give the requested instruction that "Carol Cox is an interested witness, interested in the outcome of this case and that her testimony should be scrutinized accordingly."

An instruction to scrutinize the testimony of a witness on the grounds of interest or bias relates to a subordinate feature of a criminal case, and the trial court is not required to charge as to such matters in the absence of a request for special instructions. *State v. Sealey*, 41 N.C. App. 175, 254 S.E. 2d 238 (1979). N.C. Gen. Stat. § 1-181 requires that a request for special instructions be in writing, signed by counsel submitting them and submitted to the trial court before the charge to the jury is begun. Although the defendant's motion misstated the record, she complied with the requirements of N.C. Gen. Stat. § 1-181.

The trial court is not required to give a requested instruction in the exact language of the request; however, when the request is correct in law and supported by the evidence in the case, the court must give the instructions in substance. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976). It is error for the court to change the sense or to so qualify the requested instruction as to weaken its force. *Lloyd v. Bowen*, 170 N.C. 216, 86 S.E. 797 (1915); *Brink v. Black*, 77 N.C. 59 (1877).

In this case Carol Cox testified that "I am aware that if Marie is convicted of anything, my child will not just share in the estate but receive all of it." Cox testified that the defendant had talked about killing her husband and that defendant thought she could do it without having to serve any time in prison. This testimony is damaging to the defendant.

While there is no error if the trial judge gives the requested instructions in substance, the general credibility instructions on the facts of this case are not substantially the same as the requested instructions. Carol Cox, through her minor son, had a substantial pecuniary interest in the outcome of this case and her testimony was harmful to the defendant.

As the Court stated in *State v. Griffin*, 280 N.C. 142, 144, 185 S.E. 2d 149, 151 (1971) concerning jury instructions, "[t]here is no

hard and fast form of expression, or consecrated formula, required, but the jury should be instructed that, as to the testimony of . . . parties interested in the case and defendants, that the jury should scrutinize their testimony in light of that fact; but if after such scrutiny, the jury should believe that the witness has told the truth, they should give him as full credit as if he were disinterested." (Citation omitted.)

The failure to give the requested instructions constituted prejudicial error. The defendant was convicted of voluntary manslaughter, which is an unlawful killing, done without malice and without premeditation or deliberation. Voluntary manslaughter is defined as an intentional killing. *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). Carol Cox's testimony tends to show that defendant deliberately killed the deceased. Thus the court's failure to give the requested jury instruction constituted not only error, but prejudicial error, entitling the defendant to a new trial.

We do not consider defendant's remaining assignments of error because they may not recur on retrial.

New trial.

Judges WEBB and WELLS concur.